UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: MAR 1 2 2014         │
└─────────────────────────────────┘
```

Denise O. Suares,

            Plaintiff,

      -against-

Cityscape Tours, Inc. d/b/a City Sights New York, *et al.*,

          Defendants.

11 Civ. 5650 (AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Denise Suares brings this case against Defendants Cityscape Tours, Inc. d/b/a City Sights New York ("Cityscape"), JAD Transportation, Inc. d/b/a City Sights New York ("JAD"), collectively the "JAD Defendants" or "JAD", City Sights New York ("City Sights NY LLC" or "City Sights"), and the individual Chandrashekar Singh. The complaint alleges sex discrimination and retaliation in violation of Title VII, unequal pay in violation of the Equal Pay Act and Fair Labor Standards Act, and race discrimination in violation of 42 U.S.C. § 1981. The case arises from Mr. Singh's alleged assault of the Plaintiff at a company holiday party and the Defendants' subsequent actions.

    Before the Court are three motions for summary judgment: Plaintiff's Motion for Summary Judgment, Dkt. No. 79, City Sights' Motion for Summary Judgment, Dkt. No. 58, and the JAD Defendants' Motion for Summary Judgment, Dkt. No. 55. For the reasons that follow, Plaintiff's motion is DENIED, City Sights' motion is GRANTED, and the JAD Defendants' motion is GRANTED.

## I.    LEGAL STANDARD

    To prevail on a summary judgment motion, the moving party generally must demonstrate that "'there is no genuine issue as to any material fact' and 'the moving party is entitled to a

judgment as a matter of law.'" *Anyanwu v. City of New York*, No. 10 Civ. 8498, 2013 WL 5193990, at *1 (S.D.N.Y. Sept. 16, 2013) (quoting Fed. R. Civ. P. 56(a); *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000)). When the burden of proof at trial would fall on the non-moving party, however, the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element" of the non-moving party's claim. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). There is a genuine issue of material fact if a reasonable jury could decide in the non-moving party's favor. *Nabisco*, 220 F.3d at 45. The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In doing so, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

Although "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions[, n]onetheless, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citations omitted).

## II.   BACKGROUND

In her motion papers, Plaintiff disregarded Local Civil Rule 56.1(a), which requires a motion for summary judgment to be supported by "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Plaintiff filed such a statement, Dkt. No. 82, but it provides absolutely no citations to the record, despite the mandate that "each statement . . . must be followed by citation to [admissible] evidence . . . set forth as required by Fed. R. Civ. P. 56(c)." Local Civil Rule 56.1(d).  Furthermore, Plaintiff's response to the Defendants' motions failed to comply with Local Rule 56.1(b), which required "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Plaintiff's response disregarded this requirement entirely and provided no Counter-Statements as required by Local Rule 56.1(c). Therefore, the Court deems "[e]ach numbered paragraph in the statement of material facts set forth in [each defendant's 56.1] statement . . . admitted for purposes of the motion." Local Rule 56.1(c).  Federal Rule of Civil Procedure 56 does not require the Court "to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (citations omitted).

Nevertheless, the Court does not blindly accept JAD and City Sights' 56.1 Statements at face value, as "allegations are not 'deemed true simply by virtue of their assertion in [the] Local Rule 56.1 statement.'" *F.T.C. v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 302 (S.D.N.Y. 2008) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)).  To ensure that the "Local Rule 56.1 statement [did not] substitute for the admissibility requirement set forth in Fed. R. Civ. P. 56(e)," *Holtz*, 258 F.3d at 74, the Court has disregarded allegations that were "not accompanied by citation to admissible evidence" and allegations where "the cited evidence [did] not support the allegation." *F.T.C. v. Med. Billers Network, Inc.*, 543 F. Supp. 2d at 302. Accordingly, the following facts are undisputed and uncontroverted.

### A.    Facts

The Plaintiff, Denise Suares, works as a tour guide on double-decker bus tours of New York City. JAD 56.1 ¶¶ 9, 14; West Aff., ¶¶ 11, 13.  She was hired as a tour guide by Defendant City Scape in October 2007, where she worked until April 2009, when she was transferred to Defendant JAD. JAD 56.1 ¶¶ 14–16; West Aff. 13–15.  Defendant City Sights operates the buses. City Sights 56.1 ¶ 7; Freedberg Decl., Ex. C. (Suares Dep. at 33:3–10; 34:11–18).  City Scape and JAD are employee leasing companies providing the employees needed to operate the tours, including drivers, tour guides, and dispatchers. City Sights 56.1 ¶ 6; Freedberg Decl., Ex. B (West Tr., 20:4–20).

The JAD Defendants were wholly-owned by Janet West, and neither she nor the JAD Defendants own or have any interest in City Sights. City Sights 56.1 ¶¶ 4–5; Freedberg Decl., Ex. B (West Tr., 16:14–25, 18:18–19, 29:15–23).  The terms and conditions of the tour guides' employment is exclusively governed by a union agreement between a union and the JAD Defendants. JAD 56.1 ¶¶ 160–164; City Sights 56.1 ¶¶ 27–29; West Aff., ¶¶ 62–66; Freedberg Decl., Ex. F.

City Scape leased employees to City Sights until April 2009, when it ceased operations, and all employees were transferred to JAD. JAD 56.1 ¶¶ 7, 9; West Aff., ¶¶ 10–12.  Defendant Singh worked for JAD as a dispatcher, a non-managerial position. JAD 56.1 ¶¶ 12, 149; West Aff., ¶¶ 16, 60.

On January 12, 2010, Suares, Singh, and other JAD employees attended a holiday party at Planet Hollywood in New York City. JAD 56.1 ¶ 25; City Sights 56.1 ¶ 12; D'Angelo Aff., Ex. B, ¶¶ 27–29, Ex. C. At the party, Defendant Singh sexually assaulted Suares; he "jumped onto the couch where she was sitting, threw his left leg over her shoulder, placed his right hand on top of or in the back of her head, and began banging his [unexposed] genitals into her face." JAD 56.1 ¶¶ 26–27; D'Angelo Aff., Ex. B, ¶ 30, Ex. C, Ex. E (Suares Dep. at 163:3–170:13).  Suares unsuccessfully tried to push Singh off of her, and then JAD manager Colin West pulled Singh away. JAD 56.1 ¶ 28; City Sights 56.1 ¶ 15; Suares Dep. at 170:14–171:19.

Suares left the party immediately afterwards, worked the next day, January 13, without reporting the incident, and reported the incident to her direct supervisor, Tim Ries, on January 14. JAD 56.1 ¶ 30–32; Suares Dep. at 181:9–19, 182:16–184:5.  Ries stated that "[t]he company will not tolerate that." Suares Dep. at 186:8–18.  He asked her to describe the incident in writing, and she did so. JAD 56.1 ¶¶ 33, 37; Suares Dep. at 184:8–18; Booker Aff., ¶¶ 11–12, Ex. G. Ries also asked Suares to attend a meeting about the incident on January 18, and said he would contact the Human Resources director Michael Booker. JAD 56.1 ¶ 33; Suares Dep. at 184:8–18. Suares delivered her written Incident Report to Mr. Booker and met with him on January 18, 2010.  JAD 56.1 ¶ 38; Booker Aff., ¶ 12; Suares Dep. at 209:19–210:16.  Booker told her that the company would not tolerate such behavior.  JAD 56.1 ¶ 40; Booker Aff., ¶¶ 14.  Booker called Singh's supervisor, Rodney Trahan, and said that he wanted Singh "removed—relieved from the schedule," which in JAD's parlance means fired. JAD 56.1 ¶¶ 41–42; Suares Dep. at 210:15–16; Booker Aff., ¶ 16; D'Angelo Aff., Ex. F (Singh Dep. at 67:5–9).  Booker met with Singh that day and, after speaking with Singh and company owner Janet West, terminated his employment. JAD 56.1 ¶¶ 43, 45; Booker Aff., ¶ 17–19, Ex. H (Singh's Termination Notice); West. Aff. ¶¶ 17–18. Plaintiff never again had contact with Singh, or had any similar incident occur. JAD 56.1 ¶¶ 47, 49; Suares Dep. at 198:9–14, 200:4–10.

At various times before and after the incident, Suares' work schedule, hours, and wages changed.  JAD sets work schedules seasonally, assigning the tour guides' working days and starting times, in January (Winter), March (Spring/Summer), and September (Fall). JAD 56.1 ¶ 64; Suares Dep. at 90:13–91:21.  Plaintiff claims that General Manager Rodney Trahan retaliated against her by assigning her unfavorable schedules. JAD 56.1 ¶ 81; D'Angelo Aff., Ex. G (Suares EEOC Rebuttal Statement).

For Winter 2010 (January to March), Suares was scheduled for shifts beginning at 3:45 PM; this schedule began on January 5, 2010. JAD 56.1 ¶¶ 63–64; D'Angelo Aff., Ex. I (Suares Daily Trip Sheets).  For Spring/Summer 2010, Suares was scheduled for shifts beginning at 8:20 AM. JAD 56.1 ¶ 66; D'Angelo Aff., Exs. J, K.

In Winter 2009, the weather was relatively warm and dry, resulting in relatively more tourism and ridership on double-decker, open top buses. JAD 56.1 ¶ 96, 104–108; West. Aff., ¶¶ 31–37, Exs. G, H (weather data).  In Winter 2010, the weather was relatively cold and wet, harming tourism and ridership, resulting in fewer tours.  *Id.*  Both these weather-related decreases in business and changes in the timing of holidays decreased the hours and wages of tour guides, including Suares.  JAD 56.1 ¶¶ 86, 95–111; West Aff. ¶¶ 23–27, 30–32, 38–40; D'Angelo Aff., Ex. D, Ex. G at JAD000693–694, 701, Ex. I at JAD001240–1243, Ex. M at JAD000238–242, Ex. N, Ex. O.

In Spring 2010, fewer tour guides were scheduled for five shifts per week: roughly ten tour guides had a five-day schedule in Spring 2010, and only six of the 25 tour guides who had been scheduled for five days per week in Spring 2009 were scheduled for five days per week the next year. JAD 56.1 ¶¶ 92–94; West Aff. ¶¶ 25–27, Exs. E, F.  Suares was 36th in seniority. Suares Oppo. Aff. ¶ 35.  Altogether, a group of 16 similarly-situated tour guides with comparable seniority, including Suares, earned 15 to 54 percent less in 2010 than 2009; Suares fared relatively well, as her wages decreased by only 20 percent. JAD 56.1 ¶¶ 85, 90–91; West Aff., ¶ 21–22, 24, Ex. D.[1]

On April 6, 2010, Suares filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination in the form of sexual harassment, due to the January 12 incident. JAD 56.1 ¶ 53–56; D'Angelo Aff., Ex. C; Suares Dep. at 266:4–267:13, 287:25–290:17.  The Charge was mailed to Defendants on April 28, 2010. JAD 56.1 ¶ 71; D'Angelo Aff., Ex. C.  Suares amended her EEOC charge on September 7, 2010,

---

[1] Plaintiff appears to misrepresent these facts to the Court.  In her opposition memorandum, Plaintiff claims that Janet West "admits that by the end of year 2010 plaintiff's wages were reduced by as much as 54%." Pl.'s Oppo. Mem. 14 (citing West Aff., ¶¶ 21–23), Dkt. No. 97.  In her opposition affidavit, Suares avers that "Janet West admits that my wages decreased by . . . as much as 54% by the end of 2010." Suares Oppo. Aff., ¶ 39  (citing West Aff., ¶¶ 21–23).  The cited paragraphs of West's affidavit plainly state that her earnings were reduced 20.4 percent, West Aff. ¶¶ 21–22, and that "15 other Tour Guides hired before, after, or at about the same time as Plaintiff experienced a diminution in wages of between 15% and 54% from 2009 to 2010. West Aff. ¶ 23.  Plaintiff's misrepresentation later became even more egregious. *See* Pl.'s Reply 11 ("Janet West admits that by the end of year 2010 plaintiff's wages *were reduced* by 54% from the preceding year.") (citing West Aff. ¶¶ 21–23) (emphasis added).

to include a retaliation claim. JAD 56.1 ¶ 57; D'Angelo Aff., Ex. D.  The Amended Charge included retaliation claims  relating to alleged incidents occurring on April 11, April 18, and July 24, 2010.  JAD 56.1 ¶¶ 73, 75; D'Angelo Aff., Ex. G.  The EEOC investigated the allegations, ultimately issuing a Dismissal and Notice of Rights dated May 17, 2011, dismissing Suares' Charges, unable to conclude that the information obtained established violations of the statutes. JAD 56.1 ¶ 60; D'Angelo Aff., Ex. H.

### B.       Procedural History

The Plaintiff initiated the instant case on August 15, 2011, filing a complaint against Defendants CityScape, JAD, and CitySights. Compl., Dkt. No. 1.  Plaintiff subsequently amended her complaint and added Defendant Singh. Am. Compl., Dkt. No. 14.  Plaintiff's complaints asserted claims of sexual harassment and retaliation violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; sex discrimination violating the Equal Pay Act, 29 U.S.C. § 206(d), and Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; and race discrimination violating the Civil Rights Act of 1866, 42 U.S.C. § 1981.  The JAD Defendants, City Sights, and Mr. Singh each answered the Amended Complaint. Dkt. Nos. 17, 20, 23.  After the close of discovery, the parties filed motions for summary judgment. Dkt. Nos. 55, 58, 79.  In her Memorandum of Law in support of her motion for summary judgment, Plaintiff withdrew her race discrimination claim under 42 U.S.C. § 1981. Pl.'s Mem. 3 n.1.

## III.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment, but her motion and supporting papers are procedurally deficient in several ways.  First, Plaintiff's motion does not identify the claim or claims on which summary judgment is sought as required by Fed. R. Civ. P. 56(a), and her memorandum of law does not rectify the confusion. See Pl.'s Mot. for Summary Judgment, Dkt. No. 79; Pl.'s Mem., Dkt. No. 83.  Plaintiff's papers frequently fail to adhere to the rule that a "party asserting that a fact cannot be . . . genuinely disputed must support this assertion by . . . (A) citing to particular parts of materials in the record, . . . or (B) showing that materials cited do

not establish the . . . presence of a genuine dispute, or than an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). Plaintiff also failed to support her motion with a properly-cited Local Rule 56.1 Statement, and "[f]ailure to submit such a statement may constitute grounds for denial of the motion." Local Civil Rule 56.1(a). In response to the Defendants' arguments that these procedural deficiencies warrant denial of her motion, Plaintiff complains that the JAD 56.1 Statement "is diametrically different from a 'steamlined' statement," and argues that her own submission "offers . . . a clear, concise statement regarding an uncomplicated fact pattern." Pl.'s Reply 6, Dkt. No. 107. In fact, the Defendants complied with the Court's Individual Rule that such statements are limited to no more than 25 pages, while the Plaintiff's statement requires the other parties and the Court to traverse the record for the omitted sources. Although "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," *Holtz*, 258 F.3d at 73, the Court does not do so here. Without proper factual support, Plaintiff cannot demonstrate there are no genuine issues of material facts, or that she is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment is therefore denied.

## IV.   DEFENDANT CITY SIGHTS' MOTION FOR SUMMARY JUDGMENT

### A.   Title VII Claims

Defendant City Sights New York, LLC, brings a motion for summary judgment, arguing that each of Plaintiff's claims against it must be dismissed because it was not her employer. Dkt. No. 55. "Title VII imposes liability for employment discrimination only on an 'employer.'" *Arculeo v. On–Site Sales & Mktg., LLC,* 425 F.3d 193, 197 (2d Cir. 2005) (citing 42 U.S.C. § 2000e(b)). To determine whether an employment relationship exists under Title VII, the Second Circuit applies factors from the common law of agency. *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 372 (2d Cir. 2006); *see O'Connor v. Davis,* 126 F.3d 112, 115 (2d Cir. 1997). However, the Court "turn[s] to common-law principles to analyze the character of an economic relationship only in situations that plausibly approximate an employment

8

relationship." *Gulino*, 460 F.3d at 372 (citations, alterations, and quotation marks omitted). "[A] prerequisite to considering whether an individual is an employee under common-law agency principles is that the individual have been hired in the first instance . . . [by] look[ing] primarily to whether a plaintiff has received direct or indirect remuneration from the alleged employer. *Id.*

Here it is uncontroverted that Plaintiff received remuneration and benefits directly and exclusively from the JAD Defendants, not City Sights. City Sights 56.1 ¶¶ 37–38 (citing Freedberg Decl., Exs. G (paystubs), H (W-2 forms)); *see also* West. Aff. ¶¶ 7, 9. City Sights did not hire or schedule the Plaintiff, and does not hire, terminate, discipline, schedule or pay any of the JAD Defendants' tour guides. City Sights 56.1 ¶¶ 46–47 (citing West Aff., ¶ 8); *see also* West Aff. ¶¶ 7–9. The Plaintiff's supervisors were also only hired and employed by the JAD Defendants. City Sights 56.1 ¶¶ 30–35; Freedberg Decl, Ex. C (Pl. Dep. at 36:2–25, 37:2–25, 38:2); West Aff. ¶¶ 3–6. Since Plaintiff was not "hired in the first instance," she was not in an employment relationship with City Sights under the common law test. *O'Connor*, 126 F.3d at 115.

Though not formally Suares' direct employer, City Sights could still be indirectly liable under Title VII through one of two exceptions: the "single integrated employer" and "joint employer" doctrines. *See Arculeo*, 425 F.3d at 197. Although applicable to different corporate contexts, either doctrine looks to evidence of "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control" in imposing liability on an indirect employer. *Gulino*, 460 F.3d at 378 (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)).

The uncontroverted facts include no parent-subsidiary relationship or common ownership, as the JAD Defendants were wholly-owned by Janet West, and neither she nor the JAD Defendants own or have any interest in City Sights. City Sights 56.1 ¶¶ 4–5. There is no evidence of common management or central control of labor relations, as Plaintiff's supervisors hired and employed only by the JAD Defendants, and Plaintiff did not depose any City Sights representative or serve any document requests on City Sights. City Sights 56.1 ¶ 36; Freedberg

Decl., ¶ 6.  There is clearly interrelation of operations, in that the JAD Defendants used the trade name "City Sights New York" while operating on the City Sights buses where the tour guides worked.  However, the uncontroverted facts are that the terms and conditions of the tour guides' employment have been exclusively governed by a union agreement between a union and the JAD Defendants. JAD 56.1 ¶¶ 160–164; City Sights 56.1 ¶¶ 27–29; West Aff., ¶¶ 62–66; Freedberg Decl., Ex. F.

Plaintiff has not demonstrated a triable issue of fact to the contrary, and her arguments rely on the apparent misperception that the JAD Defendant's use of the trade name "City Sights New York" is sufficient to impute liability to City Sights, NY LLC.  Plaintiff has not shown any evidence that City Sights itself "exercised any kind of authority" over the tour guides as an employer.  *Arculeo*, 425 F.3d at 202.  The appearance of the name "CitySights New York" on "the tour buses, the uniforms, the schedules, brochures, flyers, [and] paraphernalia," Suares Oppo. Aff. ¶ 46, does not mean that the company City Sights NY, LLC was Plaintiff's employer.  *See, e.g.*, *Perry v. Burger King Corp.*, 924 F. Supp. 548, 550 (S.D.N.Y. 1996) (granting summary judgment for franchisor because there was no evidence it exerted control over franchisee's employees).  Given the undisputed facts, no reasonable jury could decide in Plaintiff's favor and impose liability on City Sights as her employer under Title VII.  City Sights' motion for summary judgment on Plaintiff's Title VII claims is granted.

### B.    Fair Labor Standards Act and Equal Pay Act Claims

City Sights similarly moves for summary judgment on Plaintiff's FLSA and EPA claims.  Under these statutes, an alleged employer may be liable if it had sufficient formal or functional control over the alleged employee in "economic reality." *See Barfield v. N.Y.C. Health and Hospitals Corp.*, 537 F.3d 132, 143 (2d Cir. 2008) (noting the factors used in determining employer status under the FLSA); *see also* 29 C.F.R. § 1620.8 (adopting the FLSA definitions of "[t]he words 'employer,' 'employee,' and 'employ'" for use in the EPA).  Under these tests, the undisputed facts still show that City Sights did not possess control.  City Sights did not have

formal control, as it did not have the power to hire or fire tour guides, control their schedules, or determine their pay, and did not maintain employment records. City Sights 56.1 ¶¶ 27–29, 37–38, 46–47; Freedberg Decl., Exs. F, G, H; West Aff. ¶ 8; *see Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (defining factors for assessing formal control). Nor did City Sights have functional control. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003) (noting factors used in finding "joint employer" liability via functional control). Although JAD tour guides perform tours on City Sights buses, and the role of tour guide can be seen as a discrete line-job integral to the tour production process, *see id.* (first and third factors), Plaintiff was supervised and controlled entirely by the JAD Defendants and their employees. City Sights 56.1 ¶¶ 30–35. Based on the undisputed facts, no reasonable jury could find City Sights controlled Plaintiff in economic reality. City Sights' motion for summary judgment on Plaintiff's FLSA and EPA claims is granted.

## V.    JAD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that the JAD Defendants discriminated against her because of her sex by (1) creating a hostile work environment by providing no reasonable avenue to address her complaint that Singh sexually assaulted her; (2) retaliating against her for reporting the assault to the Defendants and to the EEOC; and (3) paying men and women unequally. Plaintiff also alleges violations of the FLSA and EPA based upon unequal pay.

The JAD Defendants ("JAD") move for summary judgment against Plaintiff on all claims, and argue that they are entitled to summary judgment because (1) no hostile work environment existed; (2) no actionable retaliation occurred; (3) the Title VII equal pay claims are unexhausted; and (4) no violations of the FLSA or EPA occurred.

For the reasons that follow, the Court concludes that summary judgment is warranted on Plaintiff's hostile work environment, retaliation, FLSA, and EPA claims, and that Plaintiff's unexhausted Title VII equal pay claims must be dismissed.

A.    **Title VII Claims**

1.    *Hostile Work Environment*

Plaintiff argues that the Defendants created a hostile work environment through an unsympathetic and insufficient response to Singh's assault on the Plaintiff at the company holiday party. "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986), by "showing (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and  (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

"On a motion for summary judgment, the question for the court is whether a reasonable factfinder could conclude, considering all the circumstances, that 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 600 (2d Cir. 2006) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)).

The Defendants argue that no hostile work environment existed because the harassment was isolated to one incident, was not pervasive, and though terrible, was not sufficiently severe to provide for a Title VII Claim, as "there is no evidence that . . . an alteration [of employment] occurred here." JAD Mem. 4 (citing *Scott v. Harris Interactive, Inc.*, 851 F. Supp. 2d 631, 647 (S.D.N.Y. 2012), *aff'd in relevant part*, 2013 WL 616489 (2d Cir. Feb. 20, 2013)).  They note that "Plaintiff has offered no authority that . . . an isolated incident [like the one Plaintiff endured] can give rise to a hostile work environment claim." JAD Reply 3.

Although "[i]solated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe," *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010), a single incident may be "so severe [as to] . . . create[] a hostile work environment even in isolation, unrepeated and unaccompanied by other conduct." *Schiano*, 445 F.3d at 606 (discussing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)). As the district court in *Scott* recognized, "[o]ur law is clear . . . that 'even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment' under Title VII." *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999) (citation omitted), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see Scott*, 851 F. Supp. 2d at 647 (citing *Richardson* for this proposition). It is undisputed for the purposes of this motion that Singh sexually assaulted Suares at the holiday party. A rational jury could therefore find that that conduct was sufficiently severe, and resulted in an intolerable alteration of Suares' working conditions. *See Richardson*, 180 F.3d at 437.

However, to survive "a motion for summary judgment dismissing a claim of sexual harassment in the nature of a hostile work environment, a plaintiff must present evidence sufficient to permit a rational trier of fact to find [*both*] elements" necessary to establish a claim of a hostile work environment. *Van Alstyne v. Ackerley Group., Inc.*, 8 F. App'x 147, 151 (2d Cir. 2001). The pertinent issue is therefore whether Plaintiff has shown that "a specific basis exists for imputing the conduct that created the hostile environment *to the employer*." *Howley*, 217 F.3d at 154 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)) (internal marks omitted) (emphasis added). "When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) (citation and quotation marks omitted).

Defendants argue the undisputed facts show that they provided a reasonable avenue of complaint as a matter of law.  Plaintiff claims that "Defendants' affirmative defense that . . . corrective actions were taken . . . to correct the conduct . . . are not supported by the facts." Pl.'s Oppo. Mem. 15.

Plaintiff does not raise an issue of material fact by alleging the lack of an employee handbook, as "the absence of a written sexual harassment policy, standing alone, [does not] permit[] a finding that the employer has failed to provide a reasonable avenue for complaint or that the employer knew of the harassment but did nothing about it." *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1180 (2d Cir. 1996) (citation and marks omitted).  "[E]ven where an employer has *no* formal sexual harassment policy, a court may still find, as a matter of law, that an employer provided a 'reasonable avenue of complaint' if the evidence shows that the plaintiff in fact knew how to make a complaint and that the complaint was adequately addressed."*McArdle v. Arms Acres, Inc.*, No. 03 Civ. 5721, 2009 WL 755287, at *8 (S.D.N.Y. Mar. 23, 2009).  Based on the undisputed facts here, no reasonable jury could conclude otherwise.

Plaintiff argues that the hostile work environment may be imputed to the Defendants because "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with . . . authority over the employee." Pl.'s Oppo. Mem. 12 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).  Plaintiff states that "[v]icarious liability also applies automatically 'when the supervisor's harassment culminates in a tangible employment action,'" and suggests the Defendants are liable for various "tangible employment actions" taken by Rodney Trahan, as her supervisor. *Id.*  However, Plaintiff provides no explanation or evidence for how Trahan created a hostile work environment or acted as a "harassing supervisor."

The uncontroverted facts show that a reasonable avenue of complaint was available and utilized, resulting in the swift termination of Singh and preventing any future contact between Suares and Singh.  The Court finds that no reasonable jury could determine on this record that

14

the JAD Defendants failed to provide Plaintiff with a reasonable avenue of complaint, or that they knew of the harassment, but did nothing about it. Plaintiff knew how to make a complaint, and did so, and the complaint was adequately addressed through the swift termination of Mr. Singh. The Court therefore grants the JAD Defendants' motion for summary judgment on Plaintiff's hostile work environment claim.

### 2.    Retaliation

Plaintiff next brings a Title VII retaliation claim, alleging that the Defendants retaliated against her for reporting Singh's harassment to them and to the EEOC. Plaintiff asserts that her employer retaliated by reducing her hours, which caused her to suffer reduced wages. Suares Oppo. Aff. ¶¶ 37–40, 43. She also alleges the Defendants retaliated by making other unfavorable changes to her schedule, and encouraging her coworkers to be hostile in various ways.

The *McDonnell Douglas* burden-shifting framework governs Title VII retaliation claims. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). Under this framework, the plaintiff bears the initial production burden. If the plaintiff successfully makes out a *prima facie* case of retaliation, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If the defendant produces such a reason, the burden shifts back to plaintiff to establish, through either direct or circumstantial evidence, that the employer's proffered reason is pretextual, and the action did in fact have an improper retaliatory purpose.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Holtz*, 258 F.3d at 79 (internal citation omitted). "Title VII retaliation claims must be proved according to traditional principles of but-for causation, [which] . . . requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ____, 133 S.Ct. 2517,

2533 (2013). Because Title VII "does not set forth a general civility code for the American workplace[,] . . . a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, [meaning it] . . . might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Sante Fe Ry. Co.*, 548 U.S. at 68 (citations and quotation marks omitted).

The JAD Defendants concede that Plaintiff satisfied the first two prongs of this test: she engaged in a protected activity by reporting Singh's conduct initially and by filing a complaint with the EEOC, and Defendants were aware of these activities. *See* JAD Mem. 10. With respect to the third and fourth prongs, the Defendants argue that none of the various retaliation allegations were materially adverse employment actions, that any adverse actions were not causally connected to her protected activity, and that any adverse actions appearing causally connected were in fact justified by legitimate, nondiscriminatory reasons. *Id.* Plaintiff's opposition memorandum is unclear, fails to distinguish between claims, appears to ignore the relevant doctrines, and only implicitly offers an argument for maintaining the retaliation claim. *See* Pl.'s Oppo. Mem. 4, 11–14. While Plaintiff's affidavit and papers in support of her summary judgment motion are clearer, for the reasons explained below, she still fails to generate a triable issue precluding summary judgment. *See* Suares Oppo. Aff. ¶¶ 37–61; Pl.'s Reply 11–12 (arguing Plaintiff made a prima facie showing of retaliation).

Since the initial burden of proof to show a prima facie case falls on Plaintiff, the Defendants may meet their summary judgment burden by "point[ing] to a lack of evidence . . . on an essential element" of the retaliation claim. *Cordiano*, 575 F.3d at 204. If Defendants do so, Plaintiff "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.

Plaintiff's main retaliation claim is that JAD retaliated against her by reducing her hours, thereby reducing her wages. Suares Oppo. Aff. ¶¶ 37–40. Assuming arguendo that Plaintiff's diminution in income from 2009 to 2010 presents a prima facie case of retaliation, the Defendants supplied legitimate reasons for Plaintiff's reduced hours during the compared

periods—weather-related decreases in business affecting the entire operation, and changes in the timing of holidays. JAD 56.1 ¶¶ 86, 95–111. Plaintiff's wages did fall 20.4 percent from 2009 to 2010, but so did the wages of a cohort of similarly-senior tour guides, with reductions ranging from 15 to 54 percent. JAD 56.1 ¶¶ 85, 90–91.

Because the Defendants provided legitimate, nondiscriminatory reasons for Plaintiff's reduced wages, the burden shifts back to the Plaintiff to demonstrate that the proffered reasons are pretextual. Plaintiff has not met this burden, as she fails to point to any evidence of pretext, and does not explain why the reductions were retaliatory despite the widespread reductions occurring over the same time period. JAD 56.1 ¶¶ 85–91. As a result, no reasonable jury could determine the Plaintiff's reduced wages resulted from actionable Title VII retaliation.

Plaintiff also alleges that JAD retaliated against her by changing her schedule in various ways. For each, the Plaintiff either fails to establish a prima facie case, or fails to rebut legitimate reasons offered by the Defendants.

For example, Plaintiff alleged that her spring 2010 schedule of 8:20 AM shifts Friday through Monday was "not in accordance with [her] preference and not in accordance with seniority," Suares Opp. Aff., ¶ 35, 41, as she did not ask for the 8:20 AM tour, and would have preferred to work five days a week starting at 10:00 to 10:15 AM during the spring. Suares Dep. at 300:4–9, 112:2–113:18. No reasonable jury could conclude that this time discrepancy would dissuade a reasonable employee from making a charge of discrimination, and therefore constitute a materially adverse employment action. *See Burlington N. & Sante Fe. Ry. Co.*, 548 U.S. at 68.

Additionally, Plaintiff fails to generate a triable issue of fact regarding the examples of retaliation indicated in her EEOC charge, occurring on April 11, April 18, and July 24, 2010. D'Angelo Aff., Ex. G. The first two dates are before Defendants had notice of the EEOC charge, and thus occurred about three months after her protected activity; the third date is also about three months after the protected activity of the EEOC charge, and over six months after the incident. JAD 56.1 ¶ 74–75; D'Angelo Aff., Exs. C, G. No causal connection can be inferred because "the retaliatory action must follow closely on the protected conduct . . . to permit an

inference of retaliatory intent." *See Shanahan v. New York*, No. 10 Civ. 0742, 2011 WL 223202, at *5 (S.D.N.Y. Jan. 24, 2011) (citing cases establishing that three months or more is too long to infer retaliatory intent).  As a result, no reasonable jury could find that these incidents were a form of actionable retaliation.

Plaintiff also alleges retaliation occurred when her buses were off-loaded downtown ("deadheading" or "dead-ending").  JAD 56.1 ¶ 113; D'Angelo Aff., Ex. E (Suares Dep. at 297:20–299:10).  It appears deadheading may be one of the methods Plaintiff alleges the Defendants used to reduce her hours and wages, and the Court assumes arguendo that Plaintiff offered a prima facie case of retaliation.  Nonetheless, the Defendants responded with a legitimate, nondiscriminatory reason for the action—to efficiently serve midtown tourists using a morning tour bus to reach downtown attractions—and it is uncontroverted that Plaintiff's bus was not the only bus emptied downtown.  JAD 56.1 ¶¶ 116–121; West Aff. ¶¶ 42–46.  Plaintiff has not offered any evidence of pretext, and none can be inferred, so no reasonable jury could hold that the Defendants singled her out for this practice and thereby committed actionable Title VII retaliation.

Plaintiff's other retaliation allegations include complaints of hostile actions and gestures by co-workers.  Plaintiff's protected activity does not immunize her from "those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Sante Fe. Ry. Co.*, 548 U.S. at 68.  Plaintiff has not met her burden of demonstrating through admissible evidence how the other actions were materially adverse and causally connected to her protected activity, so no reasonable jury could find Title VII retaliation occurred via these acts.

Even when considering the above in the light most favorable to Plaintiff, drawing all reasonable inferences in her favor, the Court finds that Plaintiff has not shown any triable issue of fact regarding her various complaints of retaliation.  The Court finds the JAD Defendants entitled to judgment as a matter of law, and grants their motion for summary judgment on the Title VII retaliation claims.

### 3. *Title VII Equal Pay*

Lastly, Plaintiff's amended complaint appears to claim that the Defendants violated Title VII by paying male and female employees unequally. D'Angelo Aff., Ex. B (Am. Compl. ¶¶ 68–73, 75–76). The JAD Defendants argue Plaintiff's claim is barred because she failed to exhaust her administrative remedies by including this claim in her EEOC charge. JAD Mem. 18. Plaintiff made no argument in response, and appears to have conceded these claims. *See* Pl.'s Oppo. Mem., Suares Oppo. Aff. The concession is appropriate, as the claim is barred.

"Before bringing a Title VII action in the district court, an aggrieved employee is required to exhaust h[er] administrative remedies." *Fernandez v. Chertoff*, 471 F.3d 45, 54 (2d Cir. 2006). The Court "may only entertain Title VII claims that are either included in the EEOC charge or are based on conduct which is 'reasonably related' to the allegations in the EEOC charge," such as cases "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 252–53 (S.D.N.Y. 2009) (citations omitted). "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the (EEOC) charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Id.* at 253 (citing *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003)).

Plaintiff did not make an equal pay claim in either her Initial or Amended EEOC Charges. JAD 56.1 ¶ 135; D'Angelo Aff., Exs. B–D, G, H. Plaintiff's EEOC papers focus on the Singh incident and alleged subsequent retaliation, and do not mention the alleged differences in wages between male and female employees. *See id.* The scope of the EEOC's investigation into allegations of sexual harassment and retaliation would not reasonably be expected to include a broader inquiry into unequal pay practices. *See Martin*, 610 F. Supp. 2d at 253 (finding the lack of "reference to salary disparity for similar work" meant "plaintiff's equal pay claim is not 'reasonably related'" to race discrimination and retaliation claims). Therefore, to the extent the Plaintiff's pleadings assert a Title VII Equal Pay Claim, Plaintiff's failure to exhaust her

administrative remedies means the Court lacks jurisdiction over any such claim. *Id.* (citing *Owens v. Morgan Stanley & Co., Inc.*, No. 96 Civ. 9747, 1997 WL 793004, at *8 (S.D.N.Y. Dec. 24, 1997)). Any Title VII equal pay claims are therefore dismissed.

### B.    Fair Labor Standards Act and Equal Pay Act Claims

The same language in Plaintiff's complaint analyzed above also alleges that the Defendants violated the Fair Labor Standards Act and Equal Pay Act by giving male employees more and more favorable assignments and hours, thereby providing greater overall compensation to male employees than female employees. D'Angelo Aff., Ex. B (Am. Compl. ¶¶ 68–73, 75–76). Defendants move for summary judgment on these claims, pointing to the lack of evidence supporting crucial elements of the Plaintiff's prima facie case. JAD Mem. 20–23. Plaintiff's response makes only one cursory reference to this allegation. Pl.'s Oppo. Mem. 4. Since Plaintiff points to nothing in the record to support these claims and has made no showing that the record contains triable facts sufficient to preclude summary judgment, the Court grants the motion for summary judgment against Plaintiff on the FLSA and EPA claims.

## VI.    DEFENDANT SINGH

Having granted summary judgment for the non-individual defendants, the Court turns to the remaining defendant, the individual Chandrashekar Singh. Singh filed an answer, Dkt. No. 23, but has not appeared at the summary judgment stage.

It appears that Defendant Singh would be entitled to summary judgment because the undisputed facts seem to show that he is an individual and was not the Plaintiff's employer. He would therefore appear to be entitled to judgment as a matter of law, because such persons are not subject to liability under Title VII, the FLSA, or the EPA. *See Pacheco v. Comprehensive Pharmacy Servs.*, No. 12 Civ. 1606, 2013 WL 6087382, at *7 (S.D.N.Y. Nov. 19, 2013) (noting that individuals are not subject to liability under Title VII); *accord Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *see generally Irizarry v. Catsimatidis*, 722 F.3d 99, 103–117 (2d Cir. 2013) (discussing individual liability under the FLSA); *Lifrak v. New York City Council*,

389 F. Supp. 2d 500, 503 (S.D.N.Y. 2005) ("As part of the FLSA, the [Equal Pay Act] utilizes the FLSA's enforcement mechanisms and employs its definitional provisions.").

"After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f).  The Court therefore notifies the parties that the Court may grant summary judgment for Defendant Singh.  If Plaintiff wishes to oppose, she is hereby directed to show cause within 21 days of the date of this opinion, as to why summary judgment should not be granted to Singh.

## VII.    CONCLUSION

For the reasons stated above, the Court DENIES the Plaintiff's motion for summary judgment, Dkt. No. 79, GRANTS the City Sights motion for summary judgment, Dkt. No. 58, and GRANTS the JAD Defendants' motion for summary judgment, Dkt. No. 55.

Dated: _____, 2014
      New York, New York

_____
ALISON J. NATHAN
United States District Judge

21